IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CEDRIC CHESTER JOHNSON, AX8353,<br>Petitioner,<br>v.<br>SHAWN HATTON, Warden,<br>Respondent. | Case No. 17-cv-00872-CRB (PR)<br>**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY** |

Petitioner Cedric Chester Johnson, a state prisoner incarcerated at the Correctional Training Facility (CTF) in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 invalidating three consolidated criminal convictions from Monterey County Superior Court on the ground that he received ineffective assistance from both trial and appellate counsel. For the reasons set forth below, the petition will be denied.

## I. STATEMENT OF THE CASE

On February 17, 2015, the Monterey County District Attorney filed a complaint in case number SS150250A accusing petitioner of transportation of a controlled substance (Cal. Health & Safety Code § 11379(a)), possession for sale of a controlled substance (id. § 11378), possession of marijuana for sale (id. § 11359), receiving stolen property (Cal. Penal Code § 243(b)), and misdemeanor resisting a peace officer (id. § 148(a)(1)) with two prior prison term sentencing enhancements (id. § 667.5(b)).

On that same day, the district attorney also filed a complaint in case number SS150256A accusing petitioner of corporal injury to a spouse or cohabitant with a prior domestic violence battery conviction (Cal. Penal Code § 273.5(f)(1)) and false imprisonment (id. § 236) with two prior prison term enhancements.

On May 1, 2015, the district attorney filed a complaint in case number SS150683A accusing petitioner of criminal threats (Cal. Penal Code § 422(a)), stalking (id. § 646.9(b)) and dissuading a witness (id. § 136.1(b)(2)), and of six misdemeanor counts of violation of a criminal protective order (id. § 166(c)(1)).

On May 21, 2015, after petitioner waived a preliminary hearing on some of the charges and the court ordered that he be held to answer the others, the district attorney filed an information charging petitioner with all the above charges except criminal threats.

On May 28, 2015, the district attorney filed a motion to consolidate the above three cases and, on June 11, 2015, the motion was heard and granted.

On June 25, 2015, pursuant to a negotiated plea agreement, petitioner pled no contest to transportation of a controlled substance, misdemeanor battery on a peace officer and misdemeanor resisting a peace officer, as alleged in case number SS150250A; corporal injury to a spouse or cohabitant with a prior domestic violence battery conviction, as alleged in case number SS150256A; and dissuading a witness, as alleged in case number SS150683A. In exchange for his plea, petitioner would be sentenced to six years in state prison – four years for corporal injury to a spouse or cohabitant with a prior conviction, two years for dissuading a witness, and a concurrent three-year term for transportation of a controlled substance and concurrent 180-day terms for misdemeanor battery on a peace officer and resisting a peace officer – and all other charges would be

2

dismissed.

But when petitioner learned that his first two attorneys – Maribel Ferreira and Jan Lindberg – had engaged in plea negotiations with Deputy District Attorney Elaine McCleaf and that his current attorney – Evan George – did not know that the earlier negotiations had included a promise by the prosecutor to keep open a plea offer for a concurrent sentence for the transportation of a controlled substance and misdemeanor resisting a peace officer charges in exchange for petitioner's waiver of a preliminary hearing in case number SS150250A, petitioner informed George that he wished to withdraw his pleas. Petitioner objected to the fact that George had advised him to accept the prosecutor's six-year global plea offer, which included not only a plea to the transportation of a controlled substance and misdemeanor resisting a peace officer charges in the earlier promise to petitioner's former attorney(s), but also a plea to misdemeanor battery on a peace officer.

On August 6, 2015, George filed a motion to withdraw petitioner's pleas. The court heard and denied the motion. It also heard and denied petitioner's motions for substitution of counsel on August 19 and on August 27, after it denied the motion to withdraw petitioner's pleas.

On August 27, 2015, the court sentenced petitioner to six years in state prison pursuant to the terms of the plea agreement – four years for corporal injury to a spouse or cohabitant with a prior conviction, two years for dissuading a witness, and a concurrent three-year term for transportation of a controlled substance and concurrent 180-day terms for misdemeanor battery on a peace officer and resisting a peace officer. The remaining charges and allegations were dismissed.

/

On September 2 and 8, 2015, petitioner filed notices of appeal and requests for certificates of probable cause to appeal, which the trial court denied. New appellate counsel Nerrissa Kunakemakorn then filed petitions for a writ of mandate and for a writ of habeas corpus in the California Court of Appeal.

On December 17, 2015, the California Court of Appeal denied the petition for writ of mandate and, on September 28, 2016, affirmed the judgment of the trial court and denied the petition for a writ of habeas corpus. The appellate court noted that appellate counsel had filed an opening brief summarizing the case but raising no issues, and that petitioner had filed a supplemental brief on his own behalf. Pursuant to People v. Wende, 25 Cal. 3d 436 (1979), and People v. Kelley, 40 Cal. 4th 106 (2006), the court reviewed the appellate records in their entirely and found no arguable issues on appeal.

On October 13, 2016, petitioner filed a petition for a writ of habeas corpus, and, on October 31, 2016, a petition for review, in the Supreme Court of California. The state high court denied both petitions on December 14, 2016.

On February 22, 2017, petitioner filed the instant petition for a writ of habeas corpus under 28 U.S.C. § 2254. Per the order filed on April 26, 2017, the court found that the petition appeared to state arguably cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed a response to the order to show cause, but petitioner did not file a traverse or reply despite being afforded an opportunity to do so.

## II. STATEMENT OF FACTS

The California Court of Appeal summarized the relevant facts of three consolidated cases as follows:

### 1. Superior Court Case No. SS150256A

> In January 2015, defendant physically injured his girlfriend of seven months (Doe) during an argument at his residence. Doe testified at the preliminary hearing in March 2015 that defendant head butted her, grabbed her, threw her to the floor, and hit her face with a clenched fist. When Doe tried to leave, defendant blocked the door and pushed her away. Defendant finally opened the door and pushed her out. Doe sustained a knot on her head and lacerations under her eye. Defendant was charged with felony corporal injury to a spouse or cohabitant with a prior conviction (§ 273.5, subds. (a), (f); count 1), and felony false imprisonment (§ 236; count 2). The information alleged two prior prison terms (§ 667.5, subd. (b)).

### 2. Superior Court Case No. SS150250A

> According to the probation report, in February 2015 police initiated a traffic stop on defendant's vehicle after receiving a tip that defendant, who was on probation, was using and possibly selling drugs, and had been involved in a domestic violence incident. Defendant resisted an officer's attempt to restrain him, hitting the officer in the face and walking away. Defendant aggressively resisted arrest. It took four officers to handcuff him, and one officer fell to the ground injuring his knee during the struggle. Defendant was found in possession of 6 grams of methamphetamine and 7.2 grams of marijuana. Defendant's passenger (Doe) gave the police a bag containing 27.1 grams of methamphetamine when asked whether defendant had given her anything to hide during the traffic stop.
>
> A probation search of defendant's home uncovered a digital scale with what appeared to be traces of methamphetamine, glass smoking pipes, and a laptop computer reported stolen. Police found several small baggies near 77 grams of marijuana, suggesting that the marijuana was being prepared for sale. Neighbors informed the officers searching the residence that there had been constant pedestrian traffic in and out of defendant's home day and night, and text messages on defendant's phone suggested defendant was selling methamphetamine.
>
> Defendant was charged with felony counts of transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a); count 1), possession for sale of methamphetamine (Health & Saf. Code, § 11378; count 2), possession of marijuana for sale (Health & Saf. Code, § 11359; count 3), receiving stolen property (§ 496, subd. (a); count 4),

> and misdemeanor counts of battery on a peace officer (§ 243, subd. (b); count 5) and resisting an officer (§ 148, subd. (a)(1); count 6). The complaint also alleged two prior prison terms. (§ 667.5, subd. (b).)
>
> **3.    Superior Court Case No. SS150683A**
>
> According to the probation report, 11 days after the preliminary hearing in case No. SS150256A, Doe reported to police that she had received several letters from defendant, who was in custody at the county jail. The letters contained threatening remarks, causing Doe to fear for her safety and the safety of her daughter. Doe also reported having received phone calls from strangers asking her to put money in defendant's account at the jail. Defendant was charged with felony counts of making criminal threats (§ 422, subd. (b); count 1), stalking (§ 646.9, subd. (b); count 2), dissuading a witness from prosecuting a crime (§ 136.1, subd. (b)(2); count 3), and six misdemeanor counts of violating a criminal protective order (§ 166, subd. (c)(1); counts 4–9).

People v. Johnson, No. H042761, slip op. at 3-4 (Cal. Ct. App. Sept. 28, 2016) (ECF No. 12-1 at 275-76).

## III.   STANDARD OF REVIEW

This court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003). While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

**IV. DISCUSSION**

Petitioner claims he received ineffective assistance from both trial and appellate counsel. Petitioner specifically claims that: (1) George rendered ineffective assistance by advising petitioner to accept the prosecutor's six-year global plea offer while unaware of

7

the prosecutor's earlier promise to petitioner's first defense attorney; (2) Ferreira and Lindberg, who represented him before George, rendered ineffective assistance on a number of grounds, including waiving a preliminary hearing and allowing the cases to be consolidated; and (3) Kunakemakorn rendered ineffective assistance on appeal by filing a brief summarizing the cases but raising no issues, and by failing to raise the ineffective assistance of counsel claims regarding George, Ferreira and Lindberg.

A claim of ineffective assistance of counsel is cognizable as a claim of denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). In order to prevail on a claim of ineffective assistance of counsel, petitioner must establish two things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. Id. at 687-88. Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.

A court considering a claim of ineffective assistance "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The relevant inquiry is not what counsel could have done, but whether the choices counsel made were reasonable. See Babbitt v. Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998). In evaluating the reasonableness of counsel's conduct, a reviewing court must consider the circumstances at the time of counsel's conduct and cannot "second-guess" counsel's decisions or view them under the "fabled twenty-twenty

vision of hindsight." Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007) (en banc) (internal quotation marks and citations omitted).

Under 28 U.S.C. § 2254(d), the "pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard . . . . A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself." Harrington v. Richter, 562 U.S. 86, 101 (2011). A federal habeas court therefore must use "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013).

### A. Ineffective Assistance Claim Regarding George

Petitioner claims George rendered ineffective assistance by advising petitioner to accept the prosecutor's six-year global plea offer while unaware of the prosecutor's earlier promise to petitioner's first defense attorney. The claim is without merit.

#### 1. Factual Background

Petitioner was represented by Ferreira and by Lindberg before George was appointed to represent him. Ferreira represented petitioner first, and secured a promise from the prosecutor to keep open a plea offer for a concurrentسentence for the transportation of a controlled substance and misdemeanor resisting a peace officer charges in exchange for petitioner's waiver of a preliminary hearing in case number SS150250A. On February 24, 2015, petitioner waived his right to a preliminary hearing. But shortly thereafter he filed a motion for substitution of counsel under People v. Marsden, 2 Cal. 3d

9

118 (1970), that was heard and denied on March 27, 2015. On May 12, 2015, Ferreira was relieved due to a conflict and new defense counsel – Lindberg – was appointed.

Lindberg continued plea negotiations with the prosecutor and presented petitioner with a four-year global plea offer, consisting of two years for the corporal injury to a spouse or cohabitant with a prior conviction charge in case number SS150256A and two years for the dissuading a witness charge in case number SS150683A, with the drug case (case number SS150250A) running concurrent. Petitioner refused the offer, and filed a second Marsden motion that was heard and denied on June 9, 2015. Shortly thereafter, Lindberg declared a conflict of interest and new counsel – George – was appointed.

On June 24, 2015, the prosecutor conveyed a new six-year global plea offer to George consisting of four years for the corporal injury to a spouse or cohabitant with a prior conviction charge in case number SS150256A and two years for the dissuading a witness charge in case number SS150683A, with a concurrent three-year term for the transportation of a controlled substance charge and concurrent 180-day terms for the misdemeanor battery on a peace officer and resisting a peace officer charges in case number SS150250A. George presented the offer to petitioner, who accepted it and entered a corresponding plea the next day, June 25, 2015.

But a few days after entering the plea, petitioner notified George that he wished to withdraw it. One of the issues petitioner raised was that he did not believe he had waived a preliminary hearing in the drug case (case number SS150250A). George ordered the pertinent transcript and found that the prosecutor had promised to keep open a plea offer for a concurrent sentence for the transportation of a controlled substance and misdemeanor resisting a peace officer charges in exchange for petitioner's waiver of a preliminary

10

hearing, but under the six-year global plea offer petitioner had just accepted he had to plead to transportation of a controlled substance, misdemeanor resisting a peace officer and misdemeanor battery on a peace officer for a concurrent sentence with his other cases. George explained to petitioner that he did not believe the issue was a good one because petitioner had been charged with multiple additional misdemeanors and felonies "subsequent to the preliminary hearing waiver," but in order to protect petitioner's rights, George "put that into a motion [to withdraw the plea] and filed it on his behalf" on August 6, 2015. Pet. Ex. PP (ECF No. 1-7) at 1219.

On August 19, 2015, before the court held a hearing on the motion to withdraw the plea, it held a hearing on petitioner's Marsden motion alleging that George had rendered ineffective assistance of counsel. At the hearing, George explained that he did not believe he had been ineffectively assisting petitioner and that he had included the ineffective assistance claim in the motion to withdraw the plea in order to protect petitioner's rights. On the day George was appointed to represent petitioner, June 23, 2015, George spoke with the prosecutor and Lindberg, who stated that the most recent plea offer was for "an eight year top with a four year minimum." Id. at 1214. George contacted his investigator and set up an interview with petitioner for the next day. That night, George spent seven hours reviewing petitioner's file. The next day, George met with the prosecutor and negotiated a "six-year stipulated sentence." Id. at 1215. George and his investigator met with petitioner, who said, "'I've never wanted to go to trial, I don't want to go to trial, I want the best offer.'" Id. at 1216. George explained the most recent offer and that it would require an "appellate waiver." Id. Petitioner continued to instruct George to try to get the best offer. After spending more than an hour with petitioner and the investigator, George

11

returned to the prosecutor's office to try to get a better offer, but the prosecutor would not change her offer. The next morning, George met with petitioner and petitioner agreed to take the six-year global plea offer.

George further explained that a few days after entering his plea, petitioner notified George that he wished to withdraw it. George then discovered that the prosecutor had promised to keep open a plea offer for a concurrent sentence for the transportation of a controlled substance and misdemeanor resisting a peace officer charges in exchange for petitioner's waiver of a preliminary hearing, whereas under the six-year global plea offer petitioner had just accepted, he had to plead to transportation of a controlled substance, misdemeanor resisting a peace officer and misdemeanor battery on a peace officer for a concurrent sentence with his other cases. But George explained to petitioner that he did not believe the issue was a good one because petitioner had been charged with multiple additional misdemeanors and felonies "subsequent to the preliminary hearing waiver," id. at 1219, and petitioner was now facing a maximum sentence of "forty-five years, eight months." id. at 1220. Furthermore, the prosecutor "could be adding new charges based on a number of new factors, one of which is in the probation report, [and] the continuous contact with the victim." Id.

The state court denied petitioner's Marsden motion:

> At this time I do believe Mr. George has been properly representing you and will continue to do so. In fact, the amount of research and time he put into this case . . . in the short amount of time he's had the case, I actually find exceedingly substantial. Everything that he did in that amount of time, it appears to the Court he must have just been working on your case and no other case. . . . To have committed that sort of time to representing you and investigating the case, even discussing with someone he considers an expert on eviden[ce]. . . . I certainly feel that he has properly represented you and I deny the Marsden motion.

12

Id. at 1225–26.

/

/

At the hearing on the motion to withdraw the plea held on August 27, 2015, the court summarized the motion as follows:

> And it's – just so I'm sure I understand the grounds, it's that he ended up pleading to a deal which is different than the DA had offered at the time that he waived his rights to have a preliminary hearing in one matter. But subsequent to that waiver of preliminary hearing, he committed some other offenses which were charged so that the People no longer made that offer; is that correct?

Resp. Ex. 2 (ECF. No. 12-1) at 1503. George and the prosecutor agreed with the court's summary and the court ruled as follows:

> So based on the fact there has been a change in circumstances, I don't believe that any contract principles would hold the People obligated to keep that offer open. And I did, again, consider the motion . . . . [T]he motion to withdraw plea is denied at this time.

Id. at 1504.

### 2. **Strickland and Guilty Pleas**

The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 58 (1985). In the context of guilty pleas, the first Strickland requirement is nothing more than a restatement of the standard of attorney competence – it asks whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. See id. at 57; McMann v. Richardson, 397 U.S. 759, 771 (1970). But the second "prejudice" requirement asks whether "counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59. In order to satisfy the 'prejudice' requirement, a

13

petitioner who pleaded guilty "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. The petitioner "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010).

Strict adherence to the Strickland standard is essential when reviewing the choices an attorney made at the plea bargain stage. Premo v. Moore, 562 U.S. 115, 125 (2011). Federal habeas relief is unavailable unless the petitioner demonstrates that the state court's rulings on both the performance and prejudice prongs "involved an unreasonable application of clearly established federal law." Id. at 121.

### 3. Analysis

Petitioner is not entitled to federal habeas relief on his claim that George rendered ineffective assistance by advising petitioner to accept the prosecutor's six-year global plea offer while unaware of the prosecutor's earlier promise to petitioner's first defense attorney, Ferreira.

Petitioner has not shown that George's advice to accept the six-year global plea offer was not within the range of competence demanded of attorneys in criminal cases. See Hill, 474 U.S. at 57; McMann, 397 U.S. at 771. The record instead suggests that George's advice was reasonable because petitioner faced a much longer sentence than six years had he been convicted of the myriad felony and misdemeanor charges against him. And it further suggests that George's advice was reasonable even if he had known about the prosecutor's earlier offer to Ferreira because, as the state court noted in denying the

14

motion to withdraw petitioner's plea, the prosecutor had no obligation to hold open the earlier offer after petitioner committed and was charged with additional offenses. See Resp. Ex. 2 at 1503-04.

Nor has petitioner demonstrated that he was prejudiced by George's advice to accept the six-year global plea offer by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. There is no indication that petitioner would not have accepted the six-year global plea offer, and would have insisted on going to trial, if he had known that the misdemeanor battery on a peace officer charge in the offer was inconsistent with the prosecutor's earlier promise to Ferreira. First, nothing in the record suggests that petitioner would not have accepted the six-year global plea offer if he had known about the earlier promise to Ferreira. Although petitioner lamented at the August 19, 2015 hearing on his Marsden motion turning down the prosecutor's prior four-year global plea offer to his second defense attorney, Lindberg, he did not state at that hearing or at the August 27, 2015 hearing on his motion to withdraw his plea that he would not have accepted the prosecutor's subsequent six-year global offer to George if he had known that the misdemeanor battery on a peace officer charge in the offer was inconsistent with the prosecutor's earlier promise to Ferreira. Second, petitioner made clear to the court and to George that he wanted to take a plea and not go to trial. As George testified, petitioner had previously stated "'I've never wanted to go to trial, I don't want to go to trial, I want the best offer.'" Pet. Ex. PP at 1216. Third, the six-year global plea agreement George negotiated for petitioner was far better than the forty-five plus year sentence petitioner could have received if he lost at trial. Under the circumstances, it cannot be said that

petitioner was prejudiced by George's advice to accept the six-year global plea offer because it cannot be said that a decision to reject the six-year global plea offer "would have been rational." Padilla, 559 U.S. at 372.

Petitioner is not entitled to federal habeas relief on his ineffective assistance claim regarding George because he has not satisfied both the performance and prejudice prongs of Strickland, and demonstrated that the state courts' rejection of the claim amounted to an unreasonable application of the Strickland standard under 28 U.S.C. § 2254(d). See Harrington, 562 U.S. at 101.

### B. Ineffective Assistance Claim Regarding Ferreira and Lindberg

Petitioner claims Ferreira and Lindberg, who represented him before George, rendered ineffective assistance on a number of grounds, including waiving a preliminary hearing without his consent, violating his speedy trial rights, allowing the cases to be consolidated and failing to file a potential motion to suppress evidence. But respondent correctly argues that the claims are barred by petitioner's subsequent plea.

The Supreme Court has explained that:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.

Tollett v. Henderson, 411 U.S. 258, 267 (1973). Put simply, parties "who voluntarily and intelligently plead[] guilty to a criminal charge may not subsequently seek federal habeas corpus relief on the basis of pre-plea constitutional violations." Hudson v. Moran, 760

16

F.2d 1027, 1029–30 (9th Cir. 1985). Because petitioner's ineffective assistance claims against Ferreira and Lindberg relate to conduct that took place before petitioner entered his plea upon George's advice, the claims are barred under the rationale of Tollet.

The Ninth Circuit recently held that the rationale of Tollett does not apply if counsel's incompetence "prevents petitioner from making an informed choice whether to plead." Mahrt v. Beard, 849 F.3d 1164, 1170 (9th Cir. 2017). But Mahrt is distinguishable because petitioner's instant ineffective assistance claims do not regard George, upon whose advice petitioner entered his plea, but rather petitioner's former defense attorneys who had no role in his choice whether to plead.

In any event, petitioner's ineffective assistance claims regarding Ferreira and Lindberg would fail on the merits because petitioner has not shown that there is a reasonable probability that, but for Ferreira's and/or Lindberg's errors, he would not have accepted the six-year global plea offer negotiated by George and would have insisted on going to trial. See Hill, 474 U.S. at 58-59.

**C.  Ineffective Assistance Claim Regarding Kunakemakorn**

Petitioner claims Kunakemakorn rendered ineffective assistance on appeal by filing an appellate brief summarizing the case but raising no issues, and by failing to raise the ineffective assistance of counsel claims regarding George, Ferreira and Lindberg. The claim is without merit.

Under California's procedure established in People v. Wende, 25 Cal. 3d 436 (1979), appellate counsel, upon concluding that an appeal would be frivolous, files a brief with the appellate court that summarizes the procedural and factual history of the case. She also attests that she has reviewed the record, explained her evaluation of the case to

17

her client, provided the client with a copy of the brief, and informed the client of his right to file a pro se supplemental brief. She further requests that the appellate court independently examine the record for arguable issues. Smith v. Robbins, 528 U.S. 259, 265 (2000) (discussing People v. Wende). The appellate court, upon receiving a "Wende brief," conducts a review of the entire record and affirms if it finds the appeal to be frivolous.[1] If, however, it finds an arguable (i.e., nonfrivolous) issue, it orders briefing on that issue. Id. at 266.

California's Wende procedure does not violate the Fourteenth Amendment because it provides indigent criminal defendants sufficient safeguards to make their appeal adequate and effective. Id. at 276. It "reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." Id. at 278-79.

Here, Kunakemakorn filed a "Wende brief" summarizing the case but raising no issues, and petitioner filed a supplemental brief on his own behalf. Pursuant to People v. Wende and People v. Kelley, the California Court of Appeal reviewed the appellate record in its entirety and found no arguable issues on appeal. Petitioner cannot show that Kunakemakorn was ineffective simply because she invoked and used California's Wende procedure. See Smith, 528 U.S. at 284-85.

But petitioner can show that appellate counsel was ineffective if she unreasonably failed to discover nonfrivolous issues and did not file a merits brief raising them. See id.;

---

[1] The Supreme Court of California added in People v. Kelly, 40 Cal. 4th 106 (2006), that the appellate court must issue a written decision in a Wende appeal, and must address any claims made by the defendant if he has filed a supplemental brief to appellate counsel's Wende brief. See Kelly, 40 Cal. 4th at 124 ("[I]n affirming the judgment rendered in a Wende appeal, the Court of Appeal must prepare a written opinion that describes the contentions personally raised by the defendant and the reasons those contentions fail. In addition, the Court of Appeal must provide a brief description of the underlying facts, the procedural history, the crimes of which the defendant was convicted, and the punishment imposed.").

Delgado v. Lewis, 223 F.3d 976, 980-81 (9th Cir. 2000). The proper standard for evaluating such a claim is that enunciated in Strickland. See Smith, 528 U.S. at 285. Petitioner must first show that counsel was objectively unreasonable in failing to find arguable issues to appeal, i.e., unreasonably failed to discover nonfrivolous issues and failed to file a merits brief raising them. See id. If he succeeds in that showing, he must then demonstrate prejudice, i.e., he must show a reasonable probability that, but for counsel's unreasonable failure to file a merits brief, petitioner would have prevailed on appeal. See id. at 285-86.

Unfortunately for petitioner, he makes no such showing. The court already has found that none of his claims of ineffective assistance regarding George, Ferreira or Lindgberg have merit, and petitioner has not shown that there is a reasonable probability that, but for appellate counsel's failure to raise those claims or any other claims in a merits brief, petitioner would have prevailed on appeal. See id.; see also Wildman v. Johnson, 261 F.3d 832, 840 (9th Cir. 2001) ("appellate counsel's failure to raise issues on direct appeal does not constitute ineffective assistance of counsel when appeal would not have provided grounds for reversal").

Petitioner is not entitled to federal habeas relief on his ineffective assistance claim regarding Kunakemakorn because he has not satisfied both the performance and prejudice prongs of Strickland, and demonstrated that the state court's rejection of the claim amounted to an unreasonable application of the Strickland standard under 28 U.S.C. § 2254(d). See Harrington, 562 U.S. at 101.

## V. CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

And pursuant to Rule 11 of the Rules Governing Section 2254 Cases, a certificate of appealability (COA) under 28 U.S.C. § 2253(c) is DENIED because petitioner has not demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**IT IS SO ORDERED.**

Dated: November 7, 2017

CHARLES R. BREYER
United States District Judge